**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RONALD WILLIAMS, II

        Plaintiff,

             v.

C. HARRIS, et al.,

        Defendants.

Case No. 1:11-cv-362

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendants' motion for summary judgment (Doc. 24); Plaintiff's response in opposition to summary judgment (Doc. 25); Defendants' reply in support of their initial motion (Doc. 27); Plaintiff's supplemental memorandum in opposition to Defendants' reply (Doc. 28), and Defendants' motion to strike Plaintiff's supplemental memorandum.  (Doc. 29).  For the reasons stated below, the undersigned recommends that Defendants' motion for summary judgment be granted.

**I.  Factual and Procedural History**

Plaintiff Ronald Williams, II, presently incarcerated at the Southern Ohio Correctional Facility, and proceeding *pro se*, initiated this civil rights action on June 3, 2011, pursuant to 42 U.S.C. § 1983, alleging a deprivation of his constitutional rights under the Eighth Amendment.  (Doc. 4).  Based upon this Court's initial screening of Plaintiff's complaint under 28 U.S.C. §§1915(e) and 1915A(b), a portion of Plaintiff's claims were dismissed for failure to state a claim.  (Doc. 5).  However, the Court permitted Plaintiff's Eighth Amendment claim against two correctional officers to proceed.  In his remaining claim, Plaintiff alleges that on December 15, 2010, the two officers used excessive force

against him in violation of his Eighth Amendment rights.  (Doc. 24 at 2).  While initially identified only as "John Doe" officers (Doc. 4 at 1), the two officers have since been identified as Officers J. Brown and M. Hansford.  (Doc. 20).[1]

Williams alleges that, following an altercation with another officer on the date in question, Correctional Officers Brown and Hansford escorted him to the Lebanon Correctional Institution Infirmary (LECI) to be checked for injuries.  (Doc. 4 at 5).  Plaintiff alleges that after arriving at the infirmary, Brown and Hansford "repeatedly beat and punched [him] in the face and…head until [he] was bleeding."  (Doc. 4 at 5).  Plaintiff alleges that the beating persisted uninterrupted for several minutes.  (Doc. 4 at 5).  Plaintiff alleges that "after his screams and yelling increased," Deputy Warden of Operations, C. Harris, entered the area and asked the two officers to leave the room.  (Doc. 4 at 6). According to Plaintiff, the medical examiner then photographed his injuries, "because [he] did not have them prior to being in the examination room."  (Doc. 4 at 6).

Defendants contend this case should be dismissed in accordance with the Prison Litigation Reform Act ("PLRA"),  42 U.S.C. § 1997e(a), because plaintiff failed to exhaust available administrative remedies prior to filing suit in federal court.  (Doc. 24 at 1). Defendants argue that Plaintiff failed to fully exhaust his institutional remedies in multiple ways:  (1) by failing to timely initiate the grievance process; (2) by failing to timely appeal once he did file a grievance; (3) by failing to wait for a response to his appeal before filing this lawsuit; and (4) because the allegations of Plaintiff's grievances do not match the

---

[1]Pursuant to the Court's initial order of June 15, 2011, Defendant Timothy Brunsman was initially served by the United States Marshal, notwithstanding the lack of any cognizable claim against him, solely for the purpose of providing Plaintiff a viable person from whom to discover the identity of Officers Brown and Hansford (Doc. 24 at 2).  Pursuant to this Court's order of August 22, 2011, Brunsman's status as a previously dismissed Defendant should now be clarified on the docket.  (*See* Doc. 12, dismissing all claims against Defendant Brunsman).

allegations in this lawsuit.  Having reviewed Defendants' arguments, Plaintiff's response thereto, and relevant authority, I conclude that Defendants are entitled to summary judgment on the basis of their last two arguments.

## II. Analysis

### A.  Summary Judgment Standard

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts - in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo*

3

*Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air.  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.,* 475 U.S. at 586-587 (citation omitted).  It is the Plaintiff's burden to point out record evidence to support her claims.  "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009)(citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

## B.  The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") ushered in new prerequisites to filing suit in federal court.  Specifically, prior to filing suit, prisoners are required to fully exhaust available institutional remedies.  See 42 U.S.C. § 1997e ("No action shall be brought with

4

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  In *Porter v. Nussle*, the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*, 534 U.S. 516, 532 (2002) (citing *Wilson v. Seiter,* 501 U.S. 294, 299, n. 1 (1991)).

It has become well-established that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 204 (2007). The PLRA requires "*proper* exhaustion of all administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S. 81, 88-90 (2002) (emphasis added).  The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance.  That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* at 82.  If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 Fed. Appx. 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a)); *see also White v. McGinnis,* 131 F.3d 593, 595 (6th Cir.1997). "Exhaustion may not be completed after a federal complaint has been filed." *Hopkins,* 84 Fed. Appx. at 527 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).  "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel County,*

*Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system to every inmate at each of its institutions. Ohio Admin. Code 5120-9-31(K) (2012)(West). All inmates and staff members receive a written explanation of the grievance system and instructions for its use. § 5120-9-31(C).

The first step of the grievance procedure allows inmates to submit an informal complaint to the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from date of the event giving rise to the grievance. OAC § 5120-9-31(K)(1).

Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services, and filing a formal grievance at the prison where the inmate is confined. § 5120-9-31(K)(2). Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. OAC § 5120-9-31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of the Inspector of Institutional Services, and submitting an appeal to the Office of the Chief Inspector at ODRC. OAC § 5120-9-31(K)(3). The step three appeal must be filed within fourteen days of the inmate receiving a disposition to his formal complaint. OAC § 5120-9-31(K)(3). The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the time frame for good cause and notifies the inmate. OAC § 5120-9-31(K)(3). Decisions of the Chief Inspector are final

6

– meaning the Ohio Administrative Code provides no further means for appeal.  OAC § 5120-9-31(K)(3).   Only forms designated by the Chief Inspector may be used to file informal complaints, grievances and grievance appeals and such forms must be "reasonably available" to all inmates.  OAC § 5120-9-31(J).

Defendants argue that Plaintiff failed to fully exhaust the three-step process in four different ways:  (1) because he did not initiate step one of the grievance process within fourteen days of the incident; (2) because he failed to appeal the disposition of his step two grievance within fourteen days; (3) because he initiated this federal lawsuit prior to receiving a response to his final, step three appeal; and (4) because the subject matter of Plaintiff's grievance differs from this lawsuit.  For the reasons discussed below,  I decline to recommend judgment in Defendants' favor based upon the first two arguments, but agree that Defendants are entitled to judgment as a matter of law based upon the latter two arguments.

### 1.  Plaintiff's Alleged Failure to Timely Exhaust at Step One

Defendants first contend this case should be dismissed because, although the administrative process requires an informal complaint to be filed within fourteen (14) days of the incident at the first step of the process, Plaintiff waited until more than three months had elapsed after the December 15, 2010 incident before completing the first step of the administrative grievance process.    "Proper exhaustion demands compliance with an agency's deadlines...."  *Woodford v. Ngo*, 548 U.S. at 90.  Defendants assert that because Plaintiff's informal grievance was technically time-barred when it was filed, this lawsuit likewise should be barred.

While some evidence supports Defendant's position that Plaintiff waited three months to begin the "step one" process of filing an informal grievance, the Sixth Circuit has held that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule" should the federal courts.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  In this case, there is no evidence that prison officials ever rejected Plaintiff's step one informal grievance on the basis that it was untimely.

To the extent that it is desirable to fully address Defendants' argument, the Court finds, based upon the evidence submitted by both parties, that Plaintiff did not in fact timely comply with step one of the informal grievance process.  However, under *Reed-Bey*, the Court declines to recommend granting summary judgment to Defendants on this ground.

Attached to Defendants' motion for summary judgment are copies of all written grievance materials maintained by the institution.  Included in those materials is a copy of what Defendants maintain was Plaintiff's initial informal grievance concerning the allegations of this lawsuit.  Dated March 24, 2011, the form sets forth Plaintiff's allegations as follows:

> On 12/15/10 I was involved in an incident with Officer Stiehl after I had laid down on the ground I was beaten about the head, back, and lay while handcuffed by numerous officers.  As I was being escorted out of the Block E1 every time I rounded a corner on the stairs I was punched in the head. 3 times in all.  I then was escorted by 2 officers to the infirmary I was also told along the way "There is no camera in the infirmary, just wait."  Once I was taken into the infirmary I was taken into the second room on the right. I was sat down on the examination table still handcuffed.  I was repeated [sic] punched in my face for approximately 3 min.  After they were done I looked up to see you (Mr. Harris).  I informed you that I had just been assaulted by the 2 officers.  You had no response.  I was then cleaned up by the nurse and Lt. Eason took pictures of my injuries.  Once again I would like a reply to my request about the excessive use of force/assault.  Because my

8

earlier attempts to obtain these officers['] names have either been ignored
or denied  for the previous several months.

(Doc. 24-1 at 4).  Officer Harris's written response on the lower portion of the same

grievance form states that "[a]ll staff involved were interviewed as well as you per the

Committee.  The Committee ruled that the force was justified in response to your actions."

(*Id.*).

Also included as an attachment to Defendants' motion for summary judgment is

Plaintiff's follow-up formal "Notification of Grievance" in accordance with step two of the

institution's administrative process.  In that formal Grievance, dated April 4, 2011, Plaintiff

again complains that Officer Harris has "refused to provide those names" of the "escorting

officers" allegedly involved in the December 2010 incident.  Plaintiff alleges that Officer

Harris's refusal to provide him with the names of the escorting officers constitutes

"collusion" and makes Officer Harris "equally a participant in that unlawful act...." (Doc. 24-

1 at 5).  The step two Grievance form requires the inmate to affirmatively set forth his

compliance with step one of the administrative process.  Plaintiff clearly states that he

complied with step one of the administrative process by filing "an informal complaint *on*

*3/24/11* with Shay Harris."  (Emphasis added).

Despite these two pieces of evidence that Plaintiff did not timely file an informal

grievance within fourteen days of the December 10 incident, but instead waited until March

24, 2011,  Plaintiff alleges in his response to Defendants' motion that he filed two prior

informal grievances concerning the same matter.   According to an affidavit filed by

Plaintiff, submitted together with what are purportedly copies of the earlier grievances, he

filed his first informal grievance on December 20, 2011, and a second on December 27,

9

2011.  Plaintiff thus argues that, because the December 20, 2011 informal grievance was within the fourteen-day limit dictated by administrative regulations, he did in fact timely comply with step one of Ohio's administrative process.   Plaintiff notes that the March 24 informal grievance states "[o]nce *again* I would like a reply to my request about the excessive use of force/assault.  Because *my earlier attempts to obtain these officers[']* *names have either been ignored or denied – for the previous several months*."  (Doc. 25 at 3, emphasis added).   The informal grievance form attached to Plaintiff's responsive memorandum, dated December 27, 2011, also refers to prior "kites" (a different type of informal written grievance) submitted to three individuals concerning Plaintiff's request for the officers' names.  (Doc 25 at 11).

        In their reply memorandum, Defendants assert that the two December 2010 informal grievances have been recently fabricated and should not be viewed as sufficient to defeat summary judgment in this case.  Defendants note that - unlike the copy of the March 24 grievance form which contains a written response to the grievance - each of the forms attached to Plaintiff's response contains only Plaintiff's handwriting, with no markings, date-stamps, or writing of any kind by any prison official.  In an affidavit submitted by Eugene Hunyadi, an Assistant Chief Inspector for ODRC, (Doc. 27-1), Defendants confirm that the ODRC has no record of ever receiving either of the two grievances purportedly filed by Plaintiff in December 2010, or of any other informal grievance form submitted by Plaintiff prior to submission of the March 24, 2011 form.

        Defendants also dispute Plaintiff's argument that the reference in the March form to Plaintiff's "earlier attempts to obtain these officers' names" supports his claim that he submitted earlier written grievances.  While Defendants concede that Plaintiff may have

10

made "a prior request about the excessive force incident," Defendants point out that does not necessarily mean that Plaintiff submitted a proper informal grievance form to the appropriate official within fourteen days of the incident.  In fact, the April 2011 "step two" Grievance form undercuts Plaintiff's claim, since Plaintiff affirmatively represents on that form that he filed his step one Informal Complaint Resolution ("ICR" or informal grievance) on March 24, 2011, with no reference to any earlier date.  (Doc. 24-1 at 5).  Therefore, Defendants ask this Court to disregard what it views as Plaintiff's recently fabricated "evidence" of his alleged timely compliance with step one.

After Defendants raised the issue of fabrication in their reply memorandum, Plaintiff filed a document entitled "motion in contra to Defendants' reply" (Doc. 28) but docketed as a "Supplemental Memorandum Opposing" Defendants' motion.  In this document, herein construed by the Court as a sur-reply, Plaintiff suggests that it is the Defendants' actions and not his own that the Court should view with suspicion.  Plaintiff alleges that Defendants' representation that there is no evidence that Plaintiff submitted an ICR prior to March 24, 2011 "is completely false."  (Doc. 28 at 3).  While not making any direct allegations as to what might have happened to the forms he claims to have filed, Plaintiff suggests that Defendants "can easily destroy the original documents...and proffer that an inmate has not filed anything when it has exclusive control of all the outgoing and incoming mail of inmates."  (Doc. 28 at 2).

It is noteworthy, however, that Plaintiff presents no evidence to explain why, after allegedly receiving no response to the two ICRs he now claims to have filed in December, he waited more than three months until March of 2011 to submit a third ICR, and then proceeded to step two of the process only on his March 2011 ICR. (*See* Docs. 2, 25, 28).

He also fails to offer any explanation as to why he referenced *only* the March 24, 2011 ICR in his step two Grievance, in the portion of the form requiring the inmate to state the date he completed step one of the process.

In general, institutional staff are required to respond to the filing of an informal complaint within seven days. *See* OAC § 5120-9-31(K)(1). The same regulation explains that if an inmate fails to receive a response "within a reasonable time" at step one, the inmate "should immediately contact the inspector of institutional services...to ensure that a written response is provided.... If a response is not provided by the end of the fourth day [after contacting the institutional inspector], the informal complaint step is automatically waived." Plaintiff offers no evidence that he contacted the institutional inspector at any time to alert him/her that the two December 2010 complaints went unanswered. Therefore, there is no general waiver by the Defendants of step one of the process. Had Defendants enforced the time bar at an earlier date, this Court would recommend summary judgment on the same grounds in Defendants' favor. *See Mitchell v. Saunders*, 2006 WL 1132915 at *3 (S.D. Ohio, April 24, 2006)(finding a failure to exhaust on similar facts, where the plaintiff alleged that defendant had failed to respond to his informal complaint). However, because the evidence reflects that prison officials forgave any time limitation and addressed Plaintiff's step one grievance on the merits, the Court should follow suit and forgive this particular procedural irregularity.

### 2. Plaintiff's Failure to Timely Appeal Following Step Two Disposition

Turning to a second procedural irregularity, Defendants argue that they are nonetheless entitled to summary judgment based upon Plaintiff's failure to file a timely

appeal of the denial of his Grievance at step two of the process.  Defendants have submitted evidence that on April 5, 2011, Plaintiff received a "disposition of grievance," constituting the unfavorable administrative resolution of his formal Grievance at step two. The step two disposition summarizes Plaintiff's Grievance as stating that "justification of the use of force does not foreclose the necessary inquiry as to who were the escorting officers involved," and as centered around Deputy Warden Harris's alleged refusal to provide Plaintiff with the names of the officers.  (Doc. 24-1 at 6).  In fact, the disposition responds to the merits of the Grievance (which appears to seek names of officers) by providing a list of all officers involved (including Defendants Brown and Hansford), and indicating that all officers completed incident reports at the time.  The response further states that Harris reviewed all evidence, including the incident reports and Plaintiff's medical exam report, "and referred your complaint to a Use of Force Committee on 12/28/2010."  The response reflects that Plaintiff entered a plea of not guilty concerning his alleged "rule #3 violation" (involving the altercation with Officer Stiehl), but that on December 23, 2010, the Rules Infraction Board ("RIB") found him guilty of that violation and imposed discipline.  The RIB Committee ruled that the force used by the officers was justified and not excessive, and that Mr. Harris "stated he does not recall being asked the names of the individuals involved in the use of force."  (Doc. 24-1 at 6).  Based upon the evidence reviewed, Plaintiff was informed that his step two grievance was denied, but that he could appeal within 14 days by filing an appeal on a form "available in the office of the Inspector of Institutional Services."

Defendants argue that they are entitled to entry of judgment in their favor in this case based upon a second time-bar - Plaintiff's alleged failure to appeal the step two

disposition within fourteen days of April 5, 2011 as required.  Defendants allege that Plaintiff waited more than three months to file a formal appeal, until July 18, 2011.  In the July 2011 form entitled "Appeal to the Chief Inspector" and filed as an exhibit to Defendants' motion, Plaintiff explains that he is appealing the "refusal by authorities to provide me with the names of officials who have written use of force reports, and who were escorting me while at the infirmary."  (Doc. 24-1 at 7).

On September 13, 2011, the Chief Inspector rendered a decision rejecting Plaintiff's step three appeal and affirming the prior decision.  The Chief Inspector's decision, which completed the administrative process, states, in relevant part:

> [Y]ou claim the Department failed to comply with Administrative Rules.... You state the justification of the use of force does not hamper the inquiry as to the names of the escorting officers involved in the incident.  You state Deputy Warden Harris refused the names of the officers which in turn violates AR 5120-9-04 (A) and (B). ....
> .........
> Upon review...the Inspector found that Officers R. Stiehl, J. Brown, C. Collins, M. Hansford, and B. Hancock completed an incident report....and Lt. C. Eason completed the DR&C 2611 (Supervisor's Use of Force Summary Report) as required by policy. ...[Y]ou were taken to the infirmary and a medical exam and report were completed by RN A. Gilliam. ....
> ....
> ....From the interviews and review of additional material, it was discovered that Lt. Buckhalter was present during your time spent in the infirmary (that included questioning about the incident) and he stated that no force was used against you.  After a thorough review of the material available and interviews with those involved, this office finds no evidence to support your claim that policies relative to reporting and investigating cases involving use of force were not followed.   With respect to your request for the names of the individual(s) who were present in the infirmary, it was discovered that Lt. Buckhalter was present in the Infirmary and in a supervisory role; all other names associated with this incident are provided in this appeal response.

(Doc. 24-1 at 8-10).

In response to Defendants' second argument in favor of summary judgment, Plaintiff

contends that he did in fact file a timely appeal of the April 5, 2011 denial of his Grievance, by filing that appeal on April 14, 2011.  In fact, Defendants concede that, after receiving an unfavorable disposition on April 5, 2011, Plaintiff submitted a hand-written document which he self-titled "Notification of Grievance Appeal" to the Office of the Chief Inspector on April 14, 2011.  (*See* Doc. 25 at 8).[2]  However, on July 13, 2011, Plaintiff's initial handwritten "Appeal" was rejected as procedurally inadequate, for three reasons: (1) Plaintiff's failure to use the requisite Appeal to the Chief Inspector form; (2) Plaintiff's failure to include a copy of the "step two" Notification of Grievance; and (3) Plaintiff's failure to include a copy of the April 2011 Disposition of Grievance. (*See* Doc. 25 at 9).

Prison officials' rejection of Plaintiff's appeal explained that "[i]n order to prevent confusion, your appeal is being returned to you at this time," and expressly invited Plaintiff to attach the required forms and to re-submit the appeal.  Shortly thereafter, on July 18, 2011, Plaintiff re-submitted his appeal as directed, on the appropriate form.

Defendants point to the rejection of Plaintiff's procedurally improper appeal, and failure to submit a "proper" appeal until more than three months after the denial of his formal Grievance, as grounds for granting summary judgment in their favor in this case. Once again, however, the time limitation now sought to be imposed against Plaintiff in this federal lawsuit was ignored or forgiven by Defendants during the administrative process.

---

[2]Plaintiff argues that he was unable to use the required form for appeal because the Inspector of Institutional Services did not include a blank copy of the form with the step two disposition.  However, prison officials are not required to automatically supply forms absent an inmate's request.  (*See* § 5120-9-31(K)(3)) ("If the inmate is dissatisfied with the disposition of grievance, *the inmate may request an appeal form* from the inspector of institutional services.") (emphasis added).  The April 5, 2011 written disposition of Plaintiff's Grievance clearly states: "If you wish, you may appeal this decision to the Chief Inspector within 14 calendar days. *Appeal forms are available in the office of the Inspector of Institutional Services*." (Doc. 25 at 6) (emphasis added).  There is no evidence that Plaintiff ever requested a copy of a blank appeal form until his procedurally improper appeal was rejected, or that the form would not have been "reasonably available."

Defendants rejected Plaintiff's hand-written appeal on the basis that it was not submitted on the proper form and failed to including supporting documentation, but expressly invited Plaintiff to re-submit his otherwise timely appeal after remedying those procedural deficiencies.  When Plaintiff promptly did so, Defendants denied the appeal on the merits, not because it was untimely.  Thus, Defendants' own actions suggest that they viewed the fourteen (14) day time limit for appeal as tolled by Plaintiff's initial handwritten attempt to appeal within that time frame.   Again, adhering to the "general rule" announced in *Reed-Bey*, the Court declines to recommend summary judgment based upon Defendants' argument, presented for the first time before this Court, that Plaintiff's step three appeal was untimely.

### 3.  Initiation of Suit Prior to Final Disposition of Appeal

Defendants' third argument in favor of summary judgment finds more purchase. This suit was filed on June 3, 2011, at a time after Plaintiff had submitted his initially improper and ineffectual hand-written appeal form, but *before* that attempted appeal was rejected as procedurally deficient by the Chief Inspector.  Plaintiff did not remedy the procedural deficiencies of his appeal and perfect his appeal of his Grievance on the appropriate form until July 18, 2011, *after* he had filed suit in this Court.

As previously stated, the PLRA requires inmates to properly exhaust their administrative remedies prior to initiating a federal lawsuit.  To properly exhaust, prisoners must "complete the administrative review process in accordance with the applicable procedural rules" as defined by the prison grievance process. *Woodford v. Ngo*, 548 U.S. at 88.  Here, Plaintiff never properly exhausted due to his procedural error in failing to file

his appeal on the correct form, and with the correct documentation attached. His initial appeal was rejected by prison officials as procedurally deficient. However, he filed suit in this Court prior to receiving that initial rejection, and prior to remedying the procedural errors and re-filing his step three appeal on the correct form. Defendants should be awarded summary judgment based upon Plaintiff's decision to file a complaint in this Court without first "properly" perfecting his appeal. Unlike the unenforced time limitations raised for the first time in this Court by Defendants, prison officials explicitly rejected Plaintiff's first attempt to complete his appeal as procedurally improper.

Attempting to exhaust available administrative remedies after filing suit "ignores the clear mandate of § 1997e(a) which requires exhaustion of available administrative remedies *prior* to filing suit in federal court." *Freeman v. Francis*, 196 F.3d at 645 (quoting *Larkins v. Wilkinson*, 172 F.3d 48, 1998 WL 898870 at *2 (6th Cir. Dec. 17, 1998)(emphasis original). In stating that "[n]o action shall be brought ... until such administrative remedies as are available are exhausted," the plain language of the PLRA makes clear that exhaustion is a mandatory precondition to filing an action in federal court. 42 U.S.C. § 1997e (1996); *Freeman,* 196 F.3d at 645 (citing *Brown v. Toombs,* 139 F.3d 1102 (6th Cir. 1998)). "An inmate does not exhaust his remedies under [OAC] § 5120–9–31 until he has received a decision in an appeal to the office of the Chief Inspector." *Page v. Howard*, Case No. 1:09-cv-599, 2010 WL 3895088, at *2 (S.D. Ohio Sept. 7, 2010), *adopted*, 2010 WL 3985068 (S.D. Ohio Oct. 1, 2010); *see also Hattie v. Hallock*, 8 F. Supp.2d 685, 687 (N.D. Ohio 1998).

By (initially) failing to use the correct form for appeal and then filing suit before

receiving any response, Plaintiff failed to properly exhaust the administrative remedies available to him under OAC § 5120-9-31.  Plaintiff's failure to fully comply with the third step in the ODRC grievance process prior to filing suit is fatal to his claim.

In his construed sur-reply (Doc. 28), Plaintiff offers one last justification for filing suit prior to awaiting a response to his administrative appeal.  Plaintiff suggests that after filing his hand-written appeal on April 14, 2011, he filed suit in this Court only after he failed to receive a prompt enough response to his hand-written appeal.  Under OAC § 5120-9-31(K)(3) "[t]he chief inspector…shall provide a written response within thirty calendar days of receipt of the appeal. The chief inspector…may extend the time in which to respond for good cause, with notice to the inmate."  (OAC § 5120-9-31(K)(3)).  Plaintiff filed his complaint in this Court more than thirty calendar days after tendering his hand-written appeal to authorities.

While Plaintiff's excuse for initiating suit without awaiting a response to his step three appeal might have some merit had he submitted his appeal on the correct form, it does not excuse his failure to fully exhaust his administrative remedies on the record presented.  The Sixth Circuit has held that administrative remedies may be exhausted when prison officials fail to timely respond in some circumstances, but the rule pertains only to *properly* submitted grievances and appeals.  *See Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) ("[A]dministrative remedies are exhausted when prison officials fail to timely respond to a *properly filed grievance*.") (emphasis added).

Plaintiff makes no claim that he made any inquiry at all regarding the status of his procedurally improper appeal prior to initiating suit in this Court.  It would be unjust to deem

18

the exhaustion requirement satisfied in cases where an inmate has failed to comply with procedural requirements for perfecting an appeal.  Given that Ohio's regulations governing the grievance process are intended to provide uniform standards and expedite the processing of a presumably large number of grievances and appeals, prison officials cannot be faulted for some amount of delay in processing an appeal that is patently deficient because it has not been filed on a standard form, and does not contain supporting documentation.  Thus, the fact that prison authorities did not inform Plaintiff of the multiple procedural deficiencies of his first appeal within the standard thirty-day period should not permit Plaintiff to claim "de facto" exhaustion.  Even if there may be some "reasonable" time limits for responding to a procedurally improper and deficient appeal, the Court finds no undue delay under the circumstances presented.   When prison officials did respond to the improper appeal, they alerted Plaintiff to the procedural deficiencies and permitted him to re-file it. Plaintiff's failure to properly exhaust the third step of the administrative process prior to filing suit now entitles Defendants to summary judgment.

### 4.  Comparing the Subject Matter of the Grievances to this Lawsuit

Defendants' fourth ground for advocating that judgment be entered in their favor also has merit.  As referenced in the quotations from Plaintiff's grievance forms, the real subject matter of Plaintiff's administrative exhaustion was not the alleged excessive use of force by the two Defendants named herein, but rather, "the refusal by authorities to provide me with the names of officials" allegedly involved.  (*See* Doc. 24 at 4, quoting Doc. 18-1 at 44).  In other words, Plaintiff clearly focused on alleged rule violations by Officer Harris and other prison officials, in failing to provide him with particular names of officers,

19

rather than on the actual alleged assault by Defendants Brown and Hansford.

The regulations governing Ohio's grievance process expressly permit prisoners to file against "John Doe" officers in any case in which the identity of the officer is unknown. OAC §5120-9-31(K)("In the event an inmate does not know the identity of the personnel involved, a 'John/Jane Doe' complaint may be filed."). Thus, Plaintiff cannot argue that his failure to more accurately identify the subject matter of his grievance against Defendants Brown and Hansford was attributable to the Defendants.  By following the referenced regulation, Plaintiff easily could have identified Defendants as "John Doe" officers, just as he did in this lawsuit.[3]

A grievance filed in an attempt to exhaust administrative remedies must reasonably inform prison officials of the subject matter of the grievance, so that the officials are afforded the opportunity to address the claims prior to suit being brought in federal court. *See generally Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).  "[I]t is not enough simply to follow the grievance procedure; in order to satisfy the administrative exhaustion requirement, the content of the grievances must be adequate, too." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  While a prisoner need not allege "a specific legal theory or facts that correspond to all the required elements of a particular legal theory," the grievance must generally identify the individuals involved (even if only as "John Doe") and "must have alleged mistreatment or misconduct on the part of the defendant."  *Id.* (Internal quotation and citation omitted).  The grievance is sufficient if it provides "fair notice" to the Defendants of the mistreatment that forms the basis of the constitutional claim made in the

---

[3]As previously noted, prison officials identified Brown and Hansford in their response to Plaintiff's Grievance at step two.

20

prisoner's subsequent complaint.  *Id.*  at 726.

Plaintiff's grievance was directed to Officer Harris and his superiors, none of whom are presently Defendants in this lawsuit.  It is true that the PLRA does not require a "name all defendants" requirement to satisfy the exhaustion requirement.  *Jones v. Bock*, 549 U.S. at 217.  However, in this case, a "fair" reading of the original informal grievance, the formal step two Grievance, and Plaintiff's appeal all reflect an emphasis on prison officials' alleged failure to comply with administrative regulations that Plaintiff believed required them to provide him with the names of the correctional officials involved at an earlier date.   The response of the  Institutional Inspector and other officials reflects the same focus.  Plaintiff never directly grieved the alleged assault, which at least in part was the subject of an RIB hearing, after which Plaintiff was convicted of a rules violation.[4]  Therefore, arguably at least,  prison  officials  did  not  have  "fair  notice"  that  Plaintiff  was  attempting  to administratively  exhaust  the  decidedly  different  constitutional  issue  of  the  Eighth Amendment allegations that form the basis of this lawsuit.   While Plaintiff's failure to properly complete step three of the administrative process prior to filing suit provides the primary basis for the award of judgment to Defendants, Plaintiff's failure to provide "fair notice"  of  his  claims  against  Defendants  during  the  administrative  process  provides additional support for summary judgment.

### C.  Service on Defendant Officer M. Hansford

The Associate Assistant Attorney General representing both correctional officers

---

[4]Pursuant to OAC § 15120-9-31(B), RIB decisions or similar issues that already include an appeal mechanism are not subject to the inmate grievance procedure.  However, complaints that fall only in part within the scope of an RIB decision "will be considered to the extent ...not excluded," including to the extent that they relate to conditions of confinement or actions of staff.

explains that Defendant Hansford has not yet been properly served with a summons and copy of the complaint, and "does not waive service by filing this Motion." (Doc. 24 at 2, n.1). For his part, Plaintiff argues that Defendant Hansford's failure to file an answer or timely enter an appearance in this case should cause this Court to enter a default judgment in Plaintiff's favor against Hansford.

To the extent that the presiding district judge adopts this Report and Recommendation and dismisses Plaintiff's lawsuit, the issue of service on Defendant Hansford is moot. However, if the presiding district judge directs this litigation to continue, Defendant Hansford should be re-served by the United States Marshal. The record reflects that Plaintiff proceeds *in forma pauperis*, entitling him to free service of his complaint by the U.S. Marshal. The record further reflects that this Court directed the Marshal to timely serve both Defendants Brown and Hansford on December 9, 2011, (Doc. 20), that summons forms and copies of the complaint were transmitted to the Marshal for purposes of service, but that only Defendant Brown was actually served. (Docs. 21, 23). While the reasons for the ineffective service on Defendant Hansford are not clear, the failure of service cannot be attributed to Plaintiff on the record presented.

### III. Conclusion and Recommendation

For the reasons explained above, the Court concludes that Plaintiff failed to adequately exhaust his available administrative remedies prior to filing the instant action.

Accordingly, **IT IS RECOMMENDED:**

1. That Defendants' motion for summary judgment (Doc. 24) be **GRANTED**, that Plaintiff's claims be dismissed based upon his inadequate exhaustion prior to filing suit,

and that this case be closed;

2.  That Plaintiff's request for judgment against Defendant Hansford (Doc. 25) and Defendants' motion to strike (Doc. 29) both be DENIED as moot;

3.  In the alternative, should this case be permitted to proceed, the record should be clarified to reflect the termination of Defendant Brunsman and the U.S. Marshal should be directed to re-serve Defendant Hansford.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RONALD WILLIAMS, II

      Plaintiff,

      v.

C. HARRIS, et al.,

      Defendants.

Case No. 1:11-cv-362

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

24